**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

CHAD WARREN, an individual;

Plaintiff,

v.

HAMILTON COUNTY,
SHERIFF CHERMAINE MCGUFFEY,
CHIEF DEPUTY CHRIS KETTEMAN.
C.O. JORDAN ANDERSON,
C.O. T. WILLIAMS,
C.O. ABEL,
C.O. NEWGOLING,
C.O. BIASE,
C.O. TAYLOR,
C.O. PIENS,
C.O. FISHER,
LIEUTENANT KILLDAY,
C.O. BOWLING,
C.O. PENNENKAMP,
C.O. CROCKETT,
C.O. LINDEN,
C.O. DEARWESTER,
C.O. DAVIDSON,
C.O. DRYER,
C.O. FRITZ,
C.O. J. HILLMEN,
C.O. LEEKE,
C.O. PORTER,
C.O. JOHN DOE 1-4, and
C.O. JANE DOE 1-2,

Defendants.

Case No.: 1:26-cv-00079

**CIVIL ACTION COMPLAINT**

Plaintiff Chad Warren, by and through counsel, brings this action against Defendants Hamilton County, Sheriff Chermaine McGuffey, Chief Deputy Chris Ketteman, Correction Officers (referred to as "CO" hereafter) Jordan, T. Williams, Abel, Newgoling, Biase, Taylor,

Piens, Fisher, Killday, Bowling, Pennenkamp, Crockett, Linden, Dearwester, Davidson, Dryer, Fritz, Hillmen, Leeke, Porter, John Doe 1-4, and Jane Doe 1-2, and alleges as follows:

**PARTIES**

1. Plaintiff Chad Warren is a resident and citizen of Cleves, Ohio.

2. Defendant Hamilton County is a political subdivision of the State of Ohio

3. Defendant Charmaine McGuffey is the Sheriff of Hamilton County, Ohio, and is sued in her individual and official capacities.

4. Defendant Chris Ketteman is the Chief Deputy of Hamilton County, Ohio, and is sued in his individual and official capacities.

5. Defendant CO Anderson is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

6. Defendant CO T. Williams is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

7. Defendant CO Abel is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

8. Defendant CO Newgoling is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

9. Defendant CO Biase is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

10. Defendant CO Taylor is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

11. Defendant CO Piens is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

12. Defendant CO Fisher is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

13. Defendant Lt. Killday is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

14. Defendant CO Bowling is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

15. Defendant CO Pennenkamp is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

16. Defendant CO Crockett is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

17. Defendant CO Linden is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

18. Defendant CO Dearwester is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

19. Defendant CO Davidson is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

20. Defendant CO Dryer is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

21. Defendant CO Fritz is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

22. Defendant CO J. Hillmen is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

23. Defendant CO Leeke is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

24. Defendant CO Porter is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

25. Defendant John Doe 1 (Sergeant mentioned with Lt. Killday, *See* ¶ 51) is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

26. Defendant John Doe 2 (in the booth who said Chad was suicidal, *See* ¶ 52) is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

27. Defendant John Doe 3 (CO Bowling's partner, *See* ¶ 55) is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

28. Defendant John Doe 4 (Dearwester's unknown partner, *See* ¶ 65) is a corrections officer employed by Hamilton County, Ohio, and is sued in his individual capacity.

29. Defendant Jane Doe 1 (lady Sergeant laughing and filming during pepper ball incident, *See* ¶ 71) is a corrections officer employed by Hamilton County, Ohio, and is sued in her individual capacity.

30. Defendant Jane Doe 2 (lady CO who told Chad about court dates, *See* ¶ 80) is a corrections officer employed by Hamilton County, Ohio, and is sued in her individual capacity.

## **JURISDICTION AND VENUE**

31. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, because this action arises under the Constitution and laws of the United States, specifically 42 USCS § 1983. The Court also has supplemental jurisdiction over the related state law claims pursuant to 28 USCS § 1367.

32. This Court has personal jurisdiction over Hamilton County because it is a political subdivision of the State of Ohio located within this judicial district.

33. This Court has personal jurisdiction over Charmaine McGuffey because she is a resident of Ohio and performs her official duties within this judicial district.

34. This Court has personal jurisdiction over all individual defendants because they are residents of Ohio and/or performed their official duties within this judicial district.

35. This Court is the proper venue for this case pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to the claims occurred in Hamilton County, which is within the Southern District of Ohio.

## STATEMENT OF FACTS

36. Plaintiff Chad Warren was incarcerated in the Hamilton County jail from October 25, 2025, to January 8, 2026.

37. On November 19, 2025, at approximately 12:45 PM, Plaintiff was in the N-51 area of the jail. He had just returned from court and was getting dressed to go to work in the jail kitchen.

38. As Plaintiff was walking down the hallway, CO T. Williams grabbed him by the shoulder and asked CO Abel, "what he wanted to do with Chad."

39. CO Anderson responded, "I got something for him," and struck Plaintiff with his belt approximately 20 seconds after CO T. Williams let go of Warren.

40. COs Abel, Newgoling, and T. Williams laughed while Plaintiff was being assaulted by CO Anderson.

41. Immediately after the assault, Plaintiff showed some of the COs and a number of inmates where Anderson had struck him.

42. Plaintiff then went to the kitchen and quit his job. He returned to his pod and told COs Biase and Taylor that he wanted to speak to the Sergeant and Lieutenant about what had just happened.

43. COs Biase and Taylor laughed at Plaintiff's request to speak with supervisors.

44. After several hours passed without being able to speak with a Sergeant or Lieutenant, Plaintiff submitted a grievance through the jail kiosk.

45. At approximately 9:00 PM on November 19, 2025, when CO Taylor was doing a round, Plaintiff stopped CO Taylor to discuss the incident. CO Taylor took a statement from Plaintiff and said he would turn it over to his superior.

46. At 5:00 AM on November 20, 2025, Plaintiff used the call button to ask COs Taylor and Biase why he still had not seen a Sergeant or Lieutenant. Both officers laughed at him.

47. On November 20, 2025, at approximately 2:30 PM, Plaintiff was moved to the Reading Road treatment facility. Upon arrival, CO Piens called Plaintiff a "pussy little bitch."

48. On November 21, 2025, at approximately 4:30 PM, Plaintiff was in the hallway during medication distribution when CO Piens told Plaintiff to "stop being a pussy little bitch."

49. On November 22, 2025, CO Fisher gave Plaintiff an Ohio Victims form. The back two pages were already filled out, but CO Fisher only gave Warren the first page, not the other two pages that had been filled out.

50. On November 24, 2025, Lt. Killday and John Doe 1 (Sergeant) wanted Plaintiff to sign a paper stating he was safe around other deputies and inmates.

51. Plaintiff refused to sign the paper, so they brought him back to the jail and put Warren in protective custody, over Plaintiff's objection, because John Doe 2 (in the booth) said Plaintiff was suicidal.

52. The CERT team then came in and took Plaintiff down to the psychiatric unit to be evaluated. A nurse evaluated Plaintiff and determined he was not suicidal.

53. After the evaluation, Plaintiff was taken to administrative segregation, supposedly for his safety, but in reality, to retaliate against him for not signing the paper and for filing the grievance.

54. On November 25, 2025, at approximately 5:05 AM, while in administrative segregation, Plaintiff asked CO Bowling and John Doe 3 (his partner) to turn down the volume on the TV. They replied, "fuck you boy – you want another whooping?"

55. At 5:54 PM on November 25, 2025, Warren called CO Pennenkamp and said his back was hurting and he needed to go to medical. CO Pennenkamp told Plaintiff to fill out a sick form, which Plaintiff did immediately.

56. Despite Plaintiff completing the sick form, CO Pennenkamp still refused to take him to medical, so Plaintiff immediately filed another grievance.

57. Also on November 25, 2025, Plaintiff was supposed to go to court, but two unknown COs told the court that Warren was in a fight and that was why he was not in court. In reality, Plaintiff was in an administrative segregation cell at the time.

58. From November 26, 2025, at 9:00 AM until November 28, 2025, at 9:45 AM, Plaintiff was deprived of water entirely. He had no water to drink, wash, or flush the toilet.

59. During this time, Plaintiff repeatedly asked unknown COs for his commissary items, but they consistently refused.

60. On December 1, 2025, at approximately noon, CO Crockett told Plaintiff to "suck my dick" and threatened that he would "beat Chad's ass" and said "Fuck your lawyer." CO

Crockett never gave Plaintiff his prescribed medication and took away Plaintiff's recreation hour. CO Crockett could be seen on camera giving Plaintiff the middle finger.

61. Also on December 1, 2025, at approximately noon, CO Linden told Plaintiff to "suck my dick you little bitch."

62. On December 6, 2025, Plaintiff was on his hour out of his cell when CO Dearwester cut Plaintiff's time short and made him go back to his cell before the hour was up.

63. Plaintiff asked for a Sergeant, but his request was refused. In response, Plaintiff boarded up his cell, specifically he placed paper over the window, to force them to get a Sergeant.

64. CO Dearwester and John Doe 4 came to check on Plaintiff and asked him to take down the paper. Plaintiff said he would do so "as soon as they get a Sergeant."

65. Instead of getting a Sergeant, they brought in a CERT team and a restraint chair and threatened to pepper ball Plaintiff if he didn't take down the papers.

66. Plaintiff took down the paper and put his hands through the slot. The officers put him in the restraint chair. CO Dearwester, his partner, and the CERT team put a used, dirty spit hood over Plaintiff's head and brought him to the psychiatric unit.

67. Nurse Ellen, last name unknown, asked the officers if there was any force used on Plaintiff, and they said no. She asked if what they did to him was excessive, and all of this was recorded on a handheld camera.

68. The officers then turned off the camera, and CO Davidson and 2-3 others called Plaintiff a "pussy little bitch," which the nurse heard.

69. Plaintiff was taken back to his administrative segregation cell, still with the hood on and in the restraint chair.

70. On December 16, 2025, at approximately 12:30 PM, the CERT team, including CO Dryer, CO Fritz, and Jane Doe 1, who was a female Sergeant who was laughing and filming, was deployed to cell 6 for Inmate Johnson. Plaintiff was in cell 8.

71. The CERT team shot pepper balls at Cell 6, but the first two pepper balls went into Cell 8 where Plaintiff was housed.

72. Plaintiff asked for medical attention, but none of the CERT team members, the two Sergeants present, or CO Dearwester provided him with medical assistance.

73. At approximately 2:45 PM on December 16, 2025, CO Dearwester returned to the pod and kicked the pepper balls on the floor, spreading the irritant throughout the area and leaving everyone with burning eyes and vomiting.

74. On December 17, 2025, Warren had court. At approximately 9:45 AM, CO J. Hillmen told Plaintiff in the tunnel that he would "beat Chad's ass for my buddy Anderson." CO Hillmen then took away Plaintiff's recreation hour and sent Plaintiff back to his cell at approximately 10:30 AM.

75. On December 19, 2025, at approximately 12:30 PM, Plaintiff was taken to medical for an x-ray on his back. He was brought back at approximately 1:00 PM.

76. At approximately 1:30 PM on December 19, 2025, a doctor came up with the x-ray results and informed Plaintiff that he had a fractured spine. The doctor stated that the incident with CO Anderson either caused the fracture or exacerbated it. The doctor offered Plaintiff Tylenol and Ibuprofen for pain and inflammation.

77. On December 21, 2025, at approximately 1:50 PM, CO Dearwester and CO Leeke turned off Plaintiff's water again. These two officers also cut Plaintiff's recreation hour to 45 mins (from 12:45 PM to 1:30 PM).

78. On December 22, 2025, at 9:52 AM, CO Porter turned Plaintiff's water back on. The water shutoff also affected cell 10, causing that inmate to complain that he shouldn't be punished.

79. Plaintiff was released from jail on January 8, 2026. A female CO (Jane Doe 2) told Plaintiff that he was listed to be in court on January 5, 6, 7, and 8, 2026.

80. The jail staff falsely reported that on January 5, 2026, Plaintiff refused to go to court; on January 6, 2026, he was in a fight; on January 7, 2026, he refused to go to court; and finally, on January 8, 2026, he was allowed to go to court, at which time the judge ordered his release.

81. Defendants' actions complained of herein were undertaken wantonly, maliciously, deliberately, sadistically, intentionally, purposely, purposefully, recklessly, knowingly, and with deliberate indifference and reckless disregard to the Plaintiff's rights.

## COUNT I – EXCESSIVE FORCE IN VIOLATION TO THE EIGHTH AND FOURTEENTH AMENDMENTS 42 U.S.C. § 1983 (against Defendants Anderson, Dearwester, John Doe 4, Davidson, Dryer, Fritz, Jane Doe 1, and Hamilton County)

82. Plaintiff repeats and realleges all prior allegations.

83. Plaintiff was in custody at the Hamilton County jail.

84. Defendants, acting under color of state law, used force against Plaintiff.

85. On November 19, 2025, CO Anderson struck Plaintiff with a belt without any legitimate penological purpose.

86. On December 6, 2025, CO Dearwester, John Doe 4, and other officers placed Plaintiff in a restraint chair and put a dirty spit hood over his head without justification

87. On December 16, 2025, COs Dryer, Fritz, and Jane Doe 1 (Sergeant) shot pepper balls into Plaintiff's cell and later deliberately spread the irritant by kicking the pepper balls around the floor.

88. The force used against Plaintiff was excessive and applied maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline.

89. The assault by CO Anderson was unprovoked and occurred after CO T. Williams asked CO Abel “what he wanted to do with Chad” and CO Anderson responded, “I got something for him.”

90. The placement of Plaintiff in a restraint chair with a dirty spit hood was excessive and unnecessary, as Plaintiff had already complied with orders to remove the paper from his cell window and had placed his hands through the slot.

91. The shooting of pepper balls into Plaintiff’s cell and the deliberate spreading of the irritant throughout the pod were acts of gratuitous cruelty that served no legitimate purpose.

92. Plaintiff suffered harm as a result of defendants’ excessive force, including physical injuries, pain, and emotional distress.

93. Plaintiff was diagnosed with a fractured spine on December 19, 2025, which the doctor stated was either caused or exacerbated by the assault by CO Anderson.

94. Plaintiff suffered burning eyes, vomiting, and respiratory distress from exposure to the pepper ball irritant.

95. Defendant Hamilton County is liable under Monell because the widespread pattern of excessive force by multiple corrections officers over a period of months demonstrates a municipal custom, policy, or practice of tolerating excessive force against inmates, and a failure to properly train, supervise, and discipline corrections officers regarding the use of force.

**COUNT II – FAILURE TO INTERVENE IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS**
**(42 U.S.C. § 1983)**
**(against Defendants T. Williams, Abel, Newgoling, Biase, Taylor, Dearwester, John Doe 4, and Hamilton County)**

96. Plaintiff repeats and realleges all prior allegations.

97. Plaintiff was subjected to excessive force by corrections officers while in custody.

98. Defendants were present and observed the excessive force being used against Plaintiff.

99. On November 19, 2025, COs T. Williams, Abel, and Newgoling observed CO Anderson strike Plaintiff with a belt. In fact, CO T. Williams facilitated the assault by grabbing Plaintiff by the shoulder and asking CO Abel "what he wanted to do with Chad."

100. COs Biase and Taylor were made aware of the assault immediately after it occurred when Plaintiff showed them where he had been struck.

101. On December 6, 2025, multiple officers were present when Plaintiff was placed in a restraint chair with a dirty spit hood.

102. On December 16, 2025, multiple officers were present when pepper balls were shot into Plaintiff's cell and when CO Dearwester later kicked the pepper balls around the floor.

103. Defendants had a reasonable opportunity to intervene to prevent the harm to Plaintiff.

104. The assault by CO Anderson did not occur suddenly but was preceded by CO T. Williams grabbing Plaintiff and a verbal exchange between the officers.

105. The placement of Plaintiff in a restraint chair and the application of a dirty spit hood took sufficient time for any of the officers present to object or intervene.

106. The shooting of pepper balls into Plaintiff's cell and the later spreading of the irritant provided ample opportunity for any of the officers present to intervene.

107. Defendants failed to take reasonable steps to intervene to protect Plaintiff from excessive force.

108. Instead of intervening to prevent the assault by CO Anderson, COs T. Williams, Abel, and Newgoling laughed.

109. None of the officers present during the restraint chair incident or the pepper ball incident took any steps to prevent the use of excessive force against Plaintiff.

110. Plaintiff suffered harm as a result of defendants' failure to intervene, including, but not limited to, physical injuries, pain, and emotional distress.

111. Defendant Hamilton County is liable under Monell because the widespread pattern of officers failing to intervene to prevent constitutional violations demonstrates a municipal custom, policy, or practice of tolerating such failures, and a failure to properly train, supervise, and discipline corrections officers regarding their duty to intervene.

## COUNT III – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983) (against Defendants Pennenkamp, Dearwester, Dryer, Fritz, Jane Doe 1, and Hamilton County)

112. Plaintiff repeats and realleges all prior allegations.

113. Plaintiff had objectively serious medical needs while in custody.

114. Plaintiff suffered from back pain that was later diagnosed as a fractured spine.

115. Plaintiff suffered from burning eyes, respiratory distress, and vomiting after exposure to pepper ball irritant.

116. Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety.

117. On November 25, 2025, Plaintiff informed CO Pennenkamp that his back was hurting and he needed medical attention. Despite Plaintiff completing a sick form as instructed, CO Pennenkamp refused to take Plaintiff to medical.

118. On December 16, 2025, after pepper balls were shot into Plaintiff's cell, Plaintiff requested medical attention, but COs Dryer, Fritz, Jane Doe 1, and Dearwester refused to provide it.

119. CO Dearwester exacerbated Plaintiff’s condition by deliberately kicking pepper balls around the floor, spreading the irritant and causing inmates, including Plaintiff, to suffer burning eyes and vomiting.

120. Defendants’ conduct caused harm to Plaintiff.

121. Plaintiff’s back condition worsened without proper medical treatment, ultimately resulting in a diagnosis of a fractured spine on December 19, 2025.

122. Plaintiff suffered unnecessary pain, discomfort, and distress due to the delay in receiving medical treatment for his back injury.

123. Plaintiff suffered unnecessary respiratory distress, burning eyes, and vomiting due to the denial of medical attention after exposure to pepper ball irritant.

124. Defendant Hamilton County is liable under Monell because the pattern of officers denying inmates necessary medical care demonstrates a municipal custom, policy, or practice of deliberate indifference to inmates’ serious medical needs, and a failure to properly train, supervise, and discipline corrections officers regarding their duty to provide access to medical care.

**COUNT IV - FIRST AMENDMENT RETALIATION**
**(42 U.S.C. § 1983)**
**(against all Defendants)**

125. Plaintiff repeats and realleges all prior allegations.

126. Plaintiff engaged in constitutionally protected activity.

127. Plaintiff filed grievances regarding his mistreatment by corrections officers, including the assault by CO Anderson on November 19, 2025, and the denial of medical care by CO Pennenkamp on November 25, 2025.

128. Plaintiff requested to speak with supervisors about his mistreatment.

129. Defendants' actions adversely affected Plaintiff's protected activity.

130. After filing grievances and requesting to speak with supervisors, Plaintiff was subjected to verbal abuse, threats, placement in administrative segregation, deprivation of water, placement in a restraint chair with a dirty spit hood, denial of recreation time, and interference with court appearances.

131. On November 24, 2025, after Plaintiff had filed a grievance about the assault, Lt. Killday and John Doe 1 (Sergeant) attempted to coerce Plaintiff into signing a paper stating he was safe around deputies and inmates. When Plaintiff refused, they placed him in administrative segregation.

132. On December 1, 2025, CO Crockett explicitly referenced Plaintiff's legal efforts when he said "Fuck your lawyer," while verbally abusing Plaintiff.

133. All other aforementioned herein-described adverse actions of all other defendants were also done in retaliation for Plaintiff's constitutionally protected conduct.

134. A causal connection exists between Plaintiff's protected activity and defendants' conduct.

135. The temporal proximity between Plaintiff's filing of grievances and the adverse actions taken against him demonstrates a causal connection.

136. The many explicit references to Plaintiff and his counsel by the defendants establish that they were retaliating against Plaintiff for exercising his First Amendment rights.

137. The pattern of escalating mistreatment following Plaintiff's filing of grievances demonstrates that defendants were retaliating against Plaintiff for exercising his First Amendment rights.

138. Defendants' conduct would likely deter a person of ordinary firmness from continuing to engage in protected activity.

139. The severe and persistent nature of the retaliation, including physical abuse, verbal threats, deprivation of basic necessities like water, placement in a restraint chair with a dirty spit hood, and interference with court appearances, would deter a person of ordinary firmness from continuing to file grievances or seek legal assistance.

140. Defendant Hamilton County is liable under Monell because the pattern of retaliation by multiple corrections officers demonstrates a municipal custom, policy, or practice of retaliating against inmates who file grievances or seek legal assistance, and a failure to properly train, supervise, and discipline corrections officers regarding inmates' First Amendment rights.

**COUNT V: CONDITIONS OF CONFINEMENT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS**
**(42 U.S.C. § 1983)**
**(against Defendants Dearwester, Leeke, Porter, and Hamilton County)**

141. Plaintiff repeats and realleges all prior allegations.

142. Plaintiff was subjected to conditions that posed a substantial risk of serious harm.

143. From November 26, 2025, at 9:00 AM until November 28, 2025, at 9:45 AM (approximately 48 hours), Plaintiff was deprived of water entirely. During this time, he had no water to drink, wash, or flush the toilet.

144. On December 21, 2025, at approximately 1:50 PM, CO Dearwester and CO Leeke turned off Plaintiff's water again until CO Porter turned it back on at 9:52 AM on December 22, 2025.

145. On December 16, 2025, Plaintiff was exposed to pepper ball residue when CO Dearwester deliberately kicked pepper balls around the floor, causing inmates, including Plaintiff, to suffer burning eyes and vomiting.

146. Defendants knew of and disregarded the risk to Plaintiff's health and safety.

147. Deprivation of water for extended periods is obviously harmful to human health and hygiene.

148. Exposure to chemical irritants without proper decontamination is obviously harmful to human health.

149. Defendants' conduct was objectively unreasonable.

150. There was no legitimate penological purpose for depriving Plaintiff of water for extended periods.

151. There was no legitimate penological purpose for deliberately spreading pepper ball residue throughout the pod.

152. Plaintiff suffered harm as a result of these conditions.

153. Plaintiff suffered dehydration, inability to maintain basic hygiene, and discomfort from the lack of water.

154. Plaintiff suffered respiratory distress, burning eyes, and vomiting from exposure to the pepper ball residue.

155. Defendant Hamilton County is liable under Monell because the pattern of subjecting inmates to unconstitutional conditions demonstrates a municipal custom, policy, or practice of tolerating such conditions, and a failure to properly train, supervise, and discipline corrections officers regarding humane conditions of confinement.

**COUNT VI - DUE PROCESS VIOLATIONS**
**(42 U.S.C. § 1983)**
**(against Defendants Lt. Killday, John Doe 1, John Doe 2, Jane Doe 2, and Hamilton County)**

156. Plaintiff repeats and realleges all prior allegations.

157. Plaintiff had protected liberty interests while in custody.

158. Plaintiff had a liberty interest in avoiding administrative segregation without justification.

159. Plaintiff had a liberty interest in attending his scheduled court appearances.

160. Plaintiff was deprived of these liberty interests.

161. On November 24, 2025, Lt. Killday and John Doe 1 (Sergeant) wanted Plaintiff to sign a paper stating he was safe around other deputies and inmates. When Plaintiff refused to sign, they placed him in administrative segregation, over Plaintiff's objection, because John Doe 2 (in the booth) falsely claimed Plaintiff was suicidal.

162. A nurse evaluated Plaintiff and determined he was not suicidal, yet he was still taken to administrative segregation.

163. Plaintiff was supposed to attend court on January 5, 6, 7, and 8, 2026, but jail staff falsely reported that on January 5, he refused to go to court; on January 6, he was in a fight; and on January 7, he refused to go to court.

164. These deprivations occurred without constitutionally adequate procedures.

165. Plaintiff was not given notice, an opportunity to be heard, or any form of due process before being placed in administrative segregation.

166. Plaintiff was not given notice, an opportunity to be heard, or any form of due process before being prevented from attending his court appearances.

167. Plaintiff suffered harm as a result of these due process violations.

168. Plaintiff suffered the punitive conditions of administrative segregation despite not having violated any jail rules.

169. Plaintiff's criminal case was delayed, resulting in extended incarceration.

170. Defendant Hamilton County is liable under Monell because the pattern of due process violations demonstrates a municipal custom, policy, or practice of disregarding inmates' due process rights, and a failure to properly train, supervise, and discipline corrections officers regarding due process requirements.

**COUNT VII – CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS**
**(42 U.S.C. § 1983)**
**(against Defendants Anderson, T. Williams, Abel, Newgoling, Lt. Killday, John Doe 1, John Doe 2, Dearwester, Leeke, Jane Doe 2, and Hamilton County)**

171. Plaintiff repeats and realleges all prior allegations.

172. Two or more people conspired to deprive Plaintiff of his constitutional rights.

173. On November 19, 2025, CO T. Williams, CO Abel, CO Anderson, and CO Newgoling conspired to assault Plaintiff.

174. CO T. Williams grabbed Plaintiff by the shoulder and asked CO Abel "what he wanted to do with Chad," after which CO Anderson said, "I got something for him" and struck Plaintiff with his belt.

175. COs Abel, Newgoling, and T. Williams laughed while this occurred, indicating a coordinated effort to assault Plaintiff.

176. On November 24, 2025, Lt. Killday, John Doe 1, and John Doe 2 conspired to place Plaintiff in administrative segregation by falsely claiming he was suicidal after he refused to sign a document.

177. On December 21, 2025, COs Dearwester and Leeke conspired to turn off Plaintiff's water.

178. Multiple officers conspired to falsely report that Plaintiff refused to attend court or was in fights to prevent his court appearances on January 5–7, 2026.

179. The defendants had an agreement to deprive Plaintiff of his constitutional rights.

180. The coordinated nature of the defendants' actions, the timing of those actions in relation to Plaintiff's filing of grievances, and the similar pattern of misconduct by multiple officers demonstrate an agreement to violate Plaintiff's constitutional rights.

181. The defendants committed overt acts in furtherance of the conspiracy.

182. The assault by CO Anderson, the placement of Plaintiff in administrative segregation, the deprivation of water, and the false reports preventing Plaintiff from attending court were all overt acts in furtherance of the conspiracy.

183. Plaintiff was deprived of his constitutional rights as a result of the conspiracy.

184. Plaintiff was deprived of his right to be free from excessive force, his right to due process, his right to be free from retaliation for exercising his First Amendment rights, and his right to humane conditions of confinement.

185. Defendant Hamilton County is liable under Monell because the conspiracy among multiple corrections officers demonstrates a municipal custom, policy, or practice of tolerating

such conspiracies, and a failure to properly train, supervise, and discipline corrections officers regarding inmates' constitutional rights.

**COUNT VIII - MONELL CLAIM AGAINST HAMILTON COUNTY**
**(42 U.S.C. § 1983)**
**(against Defendants Hamilton County, McGuffey, and Ketteman)**

186. Plaintiff repeats and realleges all prior allegations.

187. Plaintiff's constitutional rights were violated as detailed in the previous counts.

188. Plaintiff's right to be free from excessive force was violated when CO Anderson struck him with a belt, when he was placed in a restraint chair with a dirty spit hood, and when pepper balls were shot into his cell.

189. Plaintiff's right to medical care was violated when CO Pennenkamp refused to take him to medical despite his back pain, and when he was denied medical attention after exposure to pepper ball irritant.

190. Plaintiff's right to be free from retaliation for exercising his First Amendment rights was violated when he was subjected to verbal abuse, threats, placement in administrative segregation, deprivation of water, placement in a restraint chair with a dirty spit hood, denial of recreation time, and interference with court appearances after filing grievances.

191. Plaintiff's right to due process was violated when he was placed in administrative segregation without justification and prevented from attending court through false reports.

192. Plaintiff's right to humane conditions of confinement was violated when he was deprived of water for extended periods and exposed to pepper ball residue.

193. Hamilton County had a policy, practice, or custom that caused the violation of Plaintiff's constitutional rights.

194. The widespread and repeated nature of these violations by numerous corrections officers over a period of months indicates a pattern, practice, or custom of misconduct at the Hamilton County jail.

195. Multiple officers engaged in similar misconduct (verbal abuse, threats, retaliation, denial of medical care, excessive force), suggesting institutional tolerance for such behavior.

196. Supervisors (sergeants and lieutenants) were repeatedly made aware of the misconduct but failed to intervene, indicating deliberate indifference to inmates' constitutional rights at an institutional level.

197. The policy, practice, or custom amounted to deliberate indifference to Plaintiff's constitutional rights.

198. The persistent pattern of constitutional violations despite Plaintiff's grievances and requests to speak with supervisors demonstrates that Hamilton County was deliberately indifferent to the risk of constitutional violations.

199. Hamilton County failed to properly train, supervise, and discipline corrections officers regarding the use of force, the provision of medical care, inmates' First Amendment rights, due process requirements, and humane conditions of confinement.

200. The policy, practice, or custom was the moving force behind the constitutional violations.

201. Hamilton County's failure to properly train, supervise, and discipline corrections officers directly contributed to the violations of Plaintiff's constitutional rights.

202. The widespread pattern of constitutional violations by multiple corrections officers over a period of months demonstrates that Hamilton County's policies, practices, or customs were the moving force behind the violations of Plaintiff's constitutional rights.

## ***State law Causes of Action***

## COUNT IX – ASSAULT
## (OHIO STATE LAW)
## (against Defendants Anderson, Bowling, John Doe 3, Crockett, J. Hillmen)

203. Plaintiff repeats and realleges all prior allegations.

204. Defendants acted intending to cause harmful or offensive contact, or imminent apprehension of such contact.

205. CO Anderson struck Plaintiff with a belt on November 19, 2025.

206. On November 25, 2025, CO Bowling and John Doe 3 threatened Plaintiff by saying "fuck you boy – you want another whooping?" when he asked them to turn down the volume on the TV.

207. On December 1, 2025, CO Crockett told Plaintiff that he would "beat Chad's ass" and said "Fuck your lawyer."

208. On December 17, 2025, CO J. Hillmen told Plaintiff that he would "beat Chad's ass for his buddy Anderson."

209. Plaintiff was put in imminent apprehension of harmful or offensive contact.

210. These threats put Plaintiff in imminent apprehension of harmful contact, especially given that he had already been physically assaulted by CO Anderson.

211. Plaintiff suffered emotional distress and anxiety as a result of these threats, particularly in the confined environment of the jail where he had no means of escape or protection.

## COUNT X – BATTERY
## (OHIO STATE LAW)
## (against Defendants Anderson, Dearwester, John Doe 4, Davidson, Dryer, Fritz, Jane Doe 1)

212. Plaintiff repeats and realleges all prior allegations.

213. Defendants acted intending to cause harmful or offensive contact.

214. CO Anderson struck Plaintiff with a belt on November 19, 2025.

215. CO Dearwester, John Doe 4, and other officers placed Plaintiff in a restraint chair and put a dirty spit hood over his head on December 6, 2025.

216. COs Dryer, Fritz, and Jane Doe 1 shot pepper balls into Plaintiff's cell and later deliberately spread the irritant by kicking the pepper balls around the floor on December 16, 2025.

217. Harmful or offensive contact with Plaintiff resulted.

218. Plaintiff suffered physical injury from CO Anderson's assault, which was later diagnosed as a fractured spine.

219. Plaintiff suffered discomfort, humiliation, and potential exposure to disease from being placed in a dirty spit hood.

220. Plaintiff suffered burning eyes, vomiting, and respiratory distress from exposure to the pepper ball irritant.

## COUNT XI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OHIO STATE LAW) (against all individual Defendants)

221. Plaintiff repeats and realleges all prior allegations.

222. Defendants intended to cause emotional distress or knew or should have known that their actions would result in serious emotional distress.

223. Multiple COs verbally abused Plaintiff, calling him a "pussy little bitch," including COs Piens, Bowling, John Doe 3, Crockett, Linden, and Davidson.

224. Multiple COs threatened Plaintiff with physical harm, including COs Bowling, John Doe 3, Crockett, and J. Hillmen.

225. Plaintiff was placed in a restraint chair with a dirty spit hood by CO Dearwester, John Doe 4, and others.

226. Plaintiff was deprived of water for extended periods by unknown COs from November 26-28, 2025, and by COs Dearwester and Leeke on December 21–22, 2025.

227. Plaintiff was exposed to pepper ball residue by COs Dryer, Fritz, Jane Doe 1, and Dearwester on December 16, 2025.

228. Plaintiff was prevented from attending court through false reports on January 5–7, 2026.

229. Defendants' conduct was extreme and outrageous.

230. The verbal abuse, threats, physical assaults, deprivation of basic necessities, and interference with court appearances were so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

231. The conduct was particularly outrageous given Plaintiff's vulnerable position as an inmate entirely dependent on defendants for his basic needs and safety.

232. Defendants' actions proximately caused Plaintiff's psychic injury.

233. The cumulative effect of defendants' treatment of Plaintiff over months of incarceration caused him to suffer serious emotional distress, including fear, anxiety, humiliation, and degradation.

234. Plaintiff suffered serious emotional distress.

235. Plaintiff's emotional distress was severe and debilitating, affecting his daily functioning and mental well-being.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants, and grant the following relief:

1. Compensatory damages against all defendants for physical injuries, pain and suffering, emotional distress, and violation of constitutional rights in an amount to be determined at trial.

2. Punitive damages against all individual defendants for their willful, malicious, and reckless disregard for Plaintiff's constitutional rights in an amount to be determined at trial.

3. Declaratory relief declaring that defendants' actions violated Plaintiff's constitutional rights under the First, Eighth, and Fourteenth Amendments.

4. Injunctive relief requiring Hamilton County to implement policies and training to prevent similar constitutional violations in the future, including proper handling of inmate grievances, appropriate use of force, provision of medical care, and prohibition of retaliation.

5. Attorney's fees and costs pursuant to 42 U.S.C. §1988; and

6. Such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: January 28, 2026

Respectfully Submitted,

***/s/ Arlene Boruchowitz***

Arlene Boruchowitz (Reg. No. 0096747)
*Trial Attorney*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
aboruchowitz@milberg.com

Alex R. Straus*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
astraus@milberg.com

Solomon M. Radner*
**RADNER LAW GROUP, PLLC**
17515 West 9 Mile Road, Suite 1050
Southfield, MI 48075
Telephone: (877) 723-6375
Facsimile: (866) 571-1020
solomon@radnerlawgroup.com

**pro hac vice* forthcoming

*Attorneys for Plaintiff Chad Warren*